IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PATRICIA McADAMS,
      Plaintiff,

vs.                                Case No.: 5:12cv307/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
      Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* doc. 9). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded for further administrative proceedings.

I.     PROCEDURAL HISTORY

On August 7, 2008, Plaintiff filed applications for DIB and SSI, and in each application she alleged disability beginning January 31, 2008 (tr. 17).[1] Her applications were denied initially and

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on December 13, 2012 (doc. 11). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 28, 2010, and on January 24, 2011, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 17–26). The Appeals Council subsequently denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).

Plaintiff initiated an appeal of the Commissioner's final decision by filing a complaint in this court on September 19, 2012 (doc. 1). After Defendant filed an answer to the complaint and a certified copy of the transcript (docs. 10, 11), Plaintiff—as directed by the court (*see* doc. 12)—filed a memorandum in support of her complaint (doc. 13), to which the Commissioner responded in opposition (doc. 16). Plaintiff subsequently requested, and received, authorization to file an amended/corrected memorandum (docs. 17, 18). In granting Plaintiff's request, the court indicated that the Commissioner could, but was not required to, file an amended memorandum in response to Plaintiff's amended memorandum and that if the Commissioner chose not to do so, she would be deemed to be proceeding on her previously filed memorandum (doc. 18). The Commissioner did not file an amended memorandum. Thus, the court considers the claims and arguments set forth in Plaintiff's amended memorandum (doc. 19) and the Commissioner's original response (doc. 16).

## II.    FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see* tr. 17–26):

(a)    Plaintiff met the insured requirements of the Act through December 31, 2012[2];

(b)    Plaintiff did not engage in substantial gainful activity during the relevant period;

(c)    Plaintiff had the following severe impairments: degenerative disc disease, diabetes mellitus, hypertension, asthma, osteoarthritis, and obesity, but she had no impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[2] Accordingly, the time frame relevant to Plaintiff's claim for DIB is January 31, 2008 (alleged onset date), through January 24, 2011 (date of ALJ's decision), even though she was insured under the Act through December 2012. The time frame relevant to her claim for SSI is August 7, 2008 (the date she applied for SSI), through January 24, 2011. *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which she is both disabled and has an SSI application on file). Thus, in general, the time frame relevant to this appeal is February 2008 through January 2011, which will hereafter be referred to as the "relevant period."

(d)     Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with certain exceptions, and thus was unable to perform any of her past relevant work because she performed her past work at light and medium levels of exertion.

(e)     Plaintiff—who was born on January 2, 1968, and was forty years of age (a "younger individual") on the date she alleges she became disabled—was able to perform other available jobs, at the sedentary level of exertion, and thus was not disabled during the relevant period.

III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

1.   If the claimant is performing substantial gainful activity, she is not disabled.

2.   If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.   If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.   If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.   Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   SUMMARY OF RELEVANT EVIDENCE[4]

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this Order should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

[4] Unless otherwise indicated, the information in this section is derived from the ALJ's opinion (tr. 17–26).

A.      Evidence Related to Plaintiff's Back Condition

Plaintiff has a history of lower back pain dating back to 2007 that is apparently related to a lifting injury she sustained at work (tr. 359), although the work injury may have exacerbated a pre-existing problem (*see* tr. 43).  Prior to January 31, 2008, Plaintiff's alleged onset date, she received treatment from Lewe S. West, M.D., a physician with Internal Medicine Associates of Dothan, Alabama (*see, e.g.*, tr. 452).  Dr. West's treatment notes reflect Plaintiff's complaints of chronic low back pain and Dr. West's repeated recommendations to Plaintiff that she lose weight (*see, e.g.,* tr. 450, 452).  The notes also reflect Dr. West's belief, which belief he shared with Plaintiff, that losing weight would help reduce her back pain (*see* tr. 497).  Also prior to Plaintiff's onset date, a magnetic resonance imaging ("MRI") of Plaintiff's lumbar spine (obtained in February 2007), revealed a herniated disc at L4-5 and degenerative disc disease ("DDD") at L4-5 and multiple levels.

On February 6, 2008, Plaintiff saw Wayne L. Warren, Jr., M.D., for a neurosurgical consultation in connection with her claim for workers' compensation benefits (*see* tr. 312).  She reported that her back pain had worsened, and thus Dr. Warren referred her for an updated MRI (tr. 315).  The MRI was obtained in late February 2008, and it revealed mild spinal stenosis at L4-5 and a mild disc bulge at L2-3 (tr. 316).  Dr. Warren recommended surgery to address Plaintiff's pain symptoms, and in March 2008 Plaintiff underwent a minimally invasive L4 laminectomy (tr. 363).  In April 2008 Plaintiff reported that her "preoperative symptoms" had improved, and Dr. Warren noted that Plaintiff's physical examination was normal in all areas tested (*see* tr. 327).  He restricted Plaintiff from work until at least until early May 2008 (or, approximately six weeks post-surgery) (*see* tr. 327–29).  On May 2, 2008, Dr. Warren conducted another, entirely normal physical examination and thereafter released Plaintiff to work with no restrictions (tr. 329).  On June 16, 2008, Dr. Warren referred Plaintiff for twelve physical therapy sessions (i.e., a four-week course, with three sessions each week) (tr. 330).  Plaintiff returned to Dr. Warren in August 2008 with complaints of left foot numbness and worsening lower back pain, although a physical examination was again unremarkable (*see* tr. 335–36).  Additionally, Dr. Warren noted that physical therapy had been effective in relieving Plaintiff's pain (*see* tr. 335).  He assessed lumbar spondylosis and referred Plaintiff to pain management for lumbar epidural steroid injections ("ESIs") (tr. 336).

Brad P. Katz, M.D., a pain management physician, examined Plaintiff on August 25, 2008 (tr. 359).  He noted that Plaintiff was obese (at four feet, ten inches tall, and 226 pounds) but in no

apparent distress when sitting (*id.*). He further noted that Plaintiff's motor abilities were intact, and that her straight leg raising test was negative (tr. 360). Dr. Katz commented that Plaintiff's complaints of pain to cutaneous stimulation across her lower back were out of proportion to his examination of the lower back itself, and that Plaintiff was possibly embellishing her symptoms (*id.*). Dr. Katz administered lumbar ESIs at L5-S1 on August 25, 2008, and September 22, 2008 (tr. 361–62), and a selective nerve root block at L3-4 on October 6, 2008 (tr. 368). In October 2008, Plaintiff reported a fifty percent reduction of her symptoms (tr. 369). Subsequent treatment records reflect that Plaintiff continued to complain of pain in her lower back and received medication for the pain.

On June 19, 2009, Plaintiff presented to an emergency room ("ER") with complaints of back pain, neck pain, and chest pain, among other complaints, and she stated she had run out of Lortab (*see* tr. 567[5]). A lumbar spine x-ray revealed disc space narrowing at L5-S1, but the lumbar vertebrae were otherwise normal (tr. 575). On a treatment record for this ER visit, a box is checked indicating that an examination of Plaintiff's back was normal, but a handwritten notation on the same record—which notation is partially illegible and appears to reflect a report by Plaintiff—indicates "midline pain" at L4-5, with radiation into the right leg (tr. 568). The record also reflects that Plaintiff's motor responses and sensation were intact, bilaterally (*id.*). Plaintiff was assessed with acute exacerbation of chronic back pain and sciatica (*id.*).

In January 2010, Plaintiff returned to the ER and complained of back pain (tr. 560). A lumbar spine x-ray revealed mild degenerative changes in the upper spine and advanced DDD at L4-5 and L5-S1 (tr. 564). A physical examination revealed mild tenderness in the lower spine and some decreased range of motion, although straight leg raising tests were negative, bilaterally (tr. 560). Plaintiff, who was noted to be "improved" upon her discharge, was assessed with acute low back pain and DDD and advised to follow up with Dr. West (*id.*).

Plaintiff returned to the ER on March 19, 2010, with complaints of chest pain (tr. 527). She explained she had been "walking around a pond while trying to fish on [March 18, 2010]" and began

---

[5] Plaintiff also reported that she needed no assistance with activities of daily living, such as dressing, performing hygiene-related activities, and being mobile (tr. 569). She made the same report on at least two subsequent visits to the ER (*see* tr. 520–21, 561).

to experience chest pain, discomfort, and pressure (tr. 528, 531, 587). Plaintiff also reported a history of "some chronic back pain" (tr. 532–33). A physical examination revealed normal motor responses, normal sensation, and full range of motion in all extremities (tr. 541–42). Although medication relieved her chest pain (tr. 541), a diagnostic cardiac catheterization was scheduled for March 22, 2010 (tr. 538).

Plaintiff returned to the ER on March 23, 2010, with complaints of groin pain and bruising related to the heart catheterization (*see* tr. 518, 526). She denied back pain (tr. 518), and an inspection of her back was normal, as were tests of her motor and sensory responses (tr. 519–20).

At a visit with Roland Spedale, M.D.,[6] in October 2010, Plaintiff complained of continued pain symptoms. Upon examination, Dr. Spedale diagnosed degenerative arthritis with suspected cervical spine disease and prescribed Ultram.

B.    Evidence Related to Plaintiff's Other Medical Conditions

Treatment records reflect that Plaintiff had diabetes mellitus during the relevant period, for which she took Metformin, and that her diabetes was controlled with medication. Plaintiff also had hypertension, for which she took various medications that were adjusted from time to time. Although Plaintiff's blood pressure was noted to be elevated at times, her hypertension was largely (and sufficiently) under control with medication (*see, e.g.*, tr. 497, treatment record noting that Plaintiff's blood pressure was satisfactory; *see also* tr. 582, noting blood pressure of 100/80). Similarly, Plaintiff was assessed with osteoarthritis, asthma, and asthmatic bronchitis, as well as wheezing and congestion, but she took medications for these conditions which controlled them. Finally, as previously noted, Plaintiff was obese and did not lose weight as recommended (*see, e.g.*, tr. 507, Dr. West's noting, in March 2010, that Plaintiff was continuing to gain weight after being "strongly admonished to work on her weight" in late December 2009 (tr. 508)).

C.    Evidence Addressing Plaintiff's Physical Capacities

On October 13, 2008, Robert Steele, M.D., a non-examining agency physician opined that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, and stand, walk, and sit six hours in an eight-hour workday (tr. 375). He also opined that Plaintiff could push or pull and perform most postural activities without limit but was occasionally limited with regard

---

[6] Dr. Spedale's treatment note reflects that Dr. West had retired (tr. 599). It thus appears that Dr. Spedale took over Plaintiff's care at Internal Medicine Associates of Dothan, Alabama (*see id.*).

to climbing ladders, ropes, or scaffolds (tr. 375–76).  Finally, Dr. Steele opined that Plaintiff had no manipulative, visual, or communicative limitations, but he recommended that Plaintiff avoid concentrated exposure to vibration (tr. 377–78).

On or about September 15, 2009, Dr. West completed a form titled Physical Capacities Evaluation (hereafter "PCE").  On this form he opined that Plaintiff could lift ten pounds occasionally and five pounds frequently, sit two hours a day, and stand or walk one hour a day (tr. 494).  He stated Plaintiff could never climb stairs, push and pull arm or leg controls, perform gross manipulation (i.e., "grasping, twisting and handling"), bend or stoop, reach, operate a motor vehicle, or work around hazardous machinery (*id.*).  He also noted that Plaintiff did not require an assistive device to walk during a normal workday and stated that Plaintiff would be absent from work more than four days a month (*id.*).  When asked to explain and briefly describe the basis for any restriction indicated on the form, Dr. West replied, "Pt. totally disabled" (*id.*).[7]  Dr. West also completed a form titled Clinical Assessment of Pain ("CAP") (tr. 495).  On this form, which has three questions and four, pre-printed options/answers for each question, Dr. West opined:  (1) "pain is present to such an extent as to be distracting to adequate performance of daily activities or work"; (2) physical activity, such as walking, standing, or sitting, will "greatly increase[] pain to such a degree as to cause distraction from tasks or total abandonment of task"; and (3) "drug side effects can be expected to be severe and to limit effectiveness due to distraction, in attention [sic], drowsiness, etc." (*id.*).

---

[7] Previously, on September 15, 2009, Dr. West stated that Plaintiff "continues to be disabled with her back, walking with a cane"; that she was "appealing her disability situation with the help of an attorney"; and that he had filled out a form "in regard to this" (i.e., Plaintiff's attempt to obtain disability benefits) (tr. 496).  In the same treatment note he stated, "Again, it is my impression that [Plaintiff] is completely and totally disabled from the bases of her back and also because of the pain medicines which she requires to get a level of comfort with her back." (Tr. 496).

D.     Plaintiff's Subjective Complaints of Pain and Other Symptoms

At her hearing held October 28, 2010, Plaintiff testified that she suffers from back problems, diabetes, hypertension, asthma, and osteoarthritis (tr. 40).  She stated she has pain in her upper back, lower back, hip, legs, and feet, and that her pain medications cause her to become disoriented, confused, dizzy, and drowsy (tr. 49, 69, 74, 81).  Plaintiff estimated that she can lift and carry eight to ten pounds, and stand or walk ten to fifteen minutes (tr. 71–72).  She reported difficulty with balancing, standing, sitting, bending, stooping, twisting, and turning (tr. 74, 81).  She also stated she always uses a cane when she goes outside or between the living room and bathroom (tr. 52–53) and that when she shops she uses a motorized cart or leans on the shopping cart (tr. 69–70). On a ten-point scale, with ten being the worst pain, Plaintiff testified that the pain she "feel[s] all the time" is "anywhere from a five to a seven" (tr. 76).  She stated that lying down eases her pain and that standing and walking ease the numbness in her legs (tr. 76–77).

Plaintiff further testified that she can dress herself (but not tie her shoes), wash dishes, wipe the table, fold the laundry, make sandwiches, and microwave grits, but she needs help from her daughter to make large meals, and she cannot sweep or mop (tr. 65–71).  She also stated she needs help from her husband to get in and out of the bathtub and wash her back (tr. 66).  She testified she goes on the internet occasionally and watches the news but has difficulty focusing and concentrating (tr. 68, 80).  Finally, Plaintiff testified she attends church twice a month but requires a break during church services (tr. 72).

E.     Testimony of the Vocational Expert

A vocational expert ("VE") testified at Plaintiff's hearing.  In summary, the VE testified that a hypothetical person with Plaintiff's RFC could not perform her past relevant work as a horticultural nursery sales person, laboratory assistant, general clerk, insulation worker, cleanup worker, lathe operator, or patcher, as she performed these jobs at light or greater levels of exertion (tr. 83–85).  The hypothetical person could, however, perform other available work, including work as a dispatcher, order clerk, and general office clerk, all of which are performed at the sedentary level of exertion and otherwise accommodate Plaintiff's RFC (tr. 85–87).

## V.     DISCUSSION

Plaintiff contends the ALJ erred by rejecting the opinions of Dr. West, a treating physician, and by discounting her subjective complaints of pain and other symptoms.

### A.     Opinions of Dr. West

As previously noted, Dr. West opined that Plaintiff is "totally disabled"; he also provided opinions on the PCE and CAP forms. The ALJ assigned no weight to Dr. West's opinion that Plaintiff is disabled and little weight to his opinions on the forms (tr. 23). Plaintiff contends the ALJ erred in doing so.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See* Lewis v. Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Chater, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(c). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See* Edwards, 937 F.2d 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

However, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). Generally, a treating physician's opinion is entitled to more weight than a consulting

physician's opinion.  *See* <u>Wilson v. Heckler</u>, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(d).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether a claimant meets a listed impairment, a claimant's RFC (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors, because those ultimate determinations are the province of the Commissioner.  20 C.F.R. § 404.1527(d).

Here, in assessing the opinions of Dr. West, the ALJ noted, correctly, that the question of whether a claimant is disabled is a question reserved to the Commissioner, and thus he did not err in assigning no weight Dr. West's opinion that Plaintiff is "totally disabled" (tr. 23).  The ALJ also noted that Dr. West's opinion of total disability, and his opinions contained on the PCE and CAP forms, are not supported by the objective medical evidence (*id.*).  The ALJ did not err in so concluding.  The results of Plaintiff's MRIs, x-rays, and physical examinations do not support an opinion that Plaintiff is totally disabled or restricted to the extent indicated by Dr. West on the forms.  For example, after reviewing an updated MRI and physically examining Plaintiff in May 2008, neurosurgeon Dr. Warren released Plaintiff to work with no restrictions.[8]  Additionally, straight leg raising tests were negative in August 2008 and January 2010.  And multiple physical examinations revealed no or only minor abnormalities, including those conducted by Dr. Warren, Dr. Katz, and ER staff.  Finally, the ALJ noted that Plaintiff's own testimony was inconsistent with the opinions expressed by Dr. West (*id.*).  For example, the ALJ noted, Dr. West opined that Plaintiff could never reach, push or pull with her arms, perform gross manipulation, bend, or stoop, but Plaintiff testified she could perform various

---

[8]  As noted *supra*, Dr. Warren treated Plaintiff for a work-related lifting injury, which injury she incurred while performing a job at a greater-than-sedentary exertional level.  Thus, his releasing Plaintiff to work with no restrictions indicates a belief by Dr. Warren that Plaintiff could perform work that required greater physical capacities than those set forth in the RFC.

daily activities that require such abilities, including folding the laundry, washing dishes, and making light meals (*id.*). These findings of the ALJ are wholly supported by the record.

In sum, the ALJ clearly articulated his reasons for rejecting Dr. West's opinions. The reasons stated are supported by substantial record evidence, and thus Plaintiff is not entitled to reversal on this ground.

B.      ALJ's Credibility Findings

Plaintiff contends the ALJ erred in discounting her complaints of disabling pain and limitations because the ALJ failed to "provid[e] any rationale articulating how he arrived at [his] credibility finding" (doc. 19 at 15).

In Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991), the court articulated the "pain standard," which applies when a disability claimant attempts to establish a disability through her own testimony of pain or other subjective symptoms. The pain standard requires: (1) evidence of an underlying medical condition and either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Holt, 921 F.2d at 1223 (internal citation omitted). If a claimant testifies as to her subjective complaints of disabling pain and other symptoms, as Plaintiff did here, the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. Foote, 67 F.3d at 1561–62. Additionally, "'[a]lthough this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.'" *Id.* at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). The credibility determination does not need to cite "'particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Id.* (quoting Jamison v. Bowen, 814 F.2d 585, 588–90 (11th Cir. 1987)).

Here, the ALJ articulated the corrected pain standard (tr. 22). He then summarized Plaintiff's hearing testimony regarding her pain, physical limitations, and daily activities (*see id.*). Next, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the

alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment.

In terms of the claimant's alleged [DDD], the undersigned finds that this impairment causes some limitations. However, there is no sufficient evidence that the claimant cannot perform work at a sedentary level. Therefore, the undersigned finds that the above [RFC] accommodates limitations caused by the claimant's [DDD].

(tr. 22–23).[9]

The ALJ's findings regarding Plaintiff's complaints of pain and limitations related to her DDD preclude meaningful review by this court and require remand for further administrative proceedings. In short, the ALJ articulated only one reason for discounting those complaints, namely, that "there is no sufficient evidence that [she] cannot perform work at a sedentary level." But the ALJ failed to point to any evidence in the record in support of this reason or otherwise explain it.[10]

The Commissioner, in contending that the ALJ committed no error in discrediting Plaintiff's subjective complaints, argues that Plaintiff "was not functionally limited so as to be disabled from performing the minimal demands of sedentary work" (doc. 16 at 16). In support, the Commissioner points to the following evidence of record: (1) Dr. Katz's opinions that Plaintiff was likely embellishing her complaints; (2) Dr. Warren's releasing Plaintiff to work; (3) Plaintiff's daily activities; (4) the decompression surgery (which, the Commissioner contends, provided "relief"); (5) the physical therapy (which, the Commissioner contends, "was effective in relieving her pain"); (6) the ESI's administered by Dr. Katz (which, the Commissioner contends, "improved [Plaintiff's] back pain"); and (7) Plaintiff's testimony that she used a cane prescribed by Dr. West, even though Dr. West indicated on the PCE that she did not require a cane (doc. 16 at 16 (citing, with one exception, the medical record, not the ALJ's decision)). The Commissioner's arguments miss the mark because they

---

[9] With regard to Plaintiff's diabetes mellitus, hypertension, osteoarthritis, and asthma, the ALJ found that Plaintiff's symptoms were sufficiently controlled with medication (tr. 23). This aspect of the ALJ's credibility finding is substantially supported by the record (and Plaintiff does not contend otherwise).

[10] To the extent the ALJ's lone reason is construed as a finding that no objective medical evidence exists confirming Plaintiff's symptoms (and therefore her complaints are not credible), the ALJ erred. "[I]n certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." Foote, 67 F.3d at 1561 (citing Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992)); see also Cline v. Sullivan, 939 F.2d 560, 566 (8th Cir. 1991) ("an ALJ may not base a denial of benefits solely on a lack of objective medical evidence") (citations omitted).

are based on post hoc rationalizations and offered here to explain the ALJ's credibility findings, but neither the Commissioner nor this court may create such rationalizations to explain the ALJ's treatment of evidence when that treatment is not apparent from the ALJ's decision itself. FPC v. Texaco Inc., 417 U.S. 380, 397, 94 S. Ct. 2315, 2326, 41 L. Ed. 2d 141 (1974) (if an action is to be upheld, it must be upheld on the same bases articulated in the agency's order, not those proffered by appellate counsel as post hoc rationalizations for agency actions). Thus, even if the evidence cited here by the Commissioner supports the ALJ's credibility findings, this court cannot uphold those findings. *See, e.g.*, Zblewski v. Schweiker, 732 F.2d 75, 78–79 (7th Cir. 1984) (while strong grounds may have existed for rejecting claimant's testimony, ALJ's failure to articulate reasons for doing so precludes meaningful appellate review); Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991) ("It is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence . . .") (emphasis added); *see also* Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 896 (11th Cir. 2010) (affirming denial of benefits because the agency's action could be upheld based on the ALJ's opinion rather than on a post hoc rationalization) (citation omitted).

Although the ALJ did discuss Plaintiff's daily activities in his decision (the "one exception" in the Commissioner's list of seven, referenced *supra*), he did so in the context of summarizing the evidence of record and discounting Dr. West's opinions (*see* tr. 22–23), not specifically in discounting Plaintiff's complaints.[11] Moreover, even if it was evident that the ALJ relied on Plaintiff's daily activities to discredit her, a finding the undersigned does not make, his reliance on those activities would be insufficient to support his overall credibility findings. Although Plaintiff testified she could perform some daily activities, as the ALJ noted, she also testified that her ability to do so was restricted (due to physical limitations and medication side effects), and the ALJ failed to adequately address those alleged restrictions or the reasons therefor. *See* Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (reliance upon plaintiff's ability to perform "simple household chores" to discount her testimony as to pain was flawed due to failure to consider plaintiff's testimony that she had to lie down every two hours); Foote, 67 F.3d at 1561 (a conclusory citation to a plaintiff's "daily activities"

---

[11] In some cases it is evident that an ALJ relied on the same reasons for discounting a treating physician's opinion in discounting a claimant's subjective complaints, even though the ALJ failed to directly state that he was doing so. In those cases, the "implication [of the ALJ's findings is] obvious to the reviewing court." Foote, 67 F.3d at 1562 (quoting Tieniber, 720 F.2d at 1255). The same cannot be said in this case.

as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing); Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) (participation in "everyday activities of short duration, such as housework or fishing," does not disqualify a plaintiff from disability, so long as such activities are not inconsistent with limitations recommended by treating physicians).

In summary, a careful review of the ALJ's decision and credibility findings reveals that he failed to build an accurate and logical bridge between the evidence and the result. Further, this court cannot uphold his credibility findings based on the one reason he specifically articulated in support thereof (i.e., that "there is no sufficient evidence that [Plaintiff] cannot perform work at a sedentary level"). *See* Social Security Ruling 82-62 (eff. Aug. 20, 1980) ("The rationale for a disability decision must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion."). *Cf.* Dyer v. Barnhart, 395 F.3d 1206, 1212 (11th Cir. 2005) ("In sum, the ALJ considered Dyer's activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that Dyer's subjective complaints were inconsistent with his testimony and the medical record. The ALJ thus adequately explained his reasons and it was reversible error for the district court to hold otherwise.") (citing Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002) (noting that the "ALJ made a reasonable decision to reject Wilson's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so")). In light of the ALJ's error, this case must be remanded for further administrative proceedings. Specifically, the ALJ must reevaluate Plaintiff's credibility in accordance with the correct legal standards and fully explain his findings in an orderly pattern that clearly shows how specific evidence leads to and supports those findings.

VI.     CONCLUSION

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the decision of the Commissioner should be reversed and remanded.

Accordingly, it is **ORDERED**, pursuant to sentence four of 42 U.S.C. § 405(g), that the decision of the Commissioner is **REVERSED**, the Commissioner is ordered to remand this case to the administrative law judge for further proceedings consistent with this order, and the Clerk is directed to close the file.

At Pensacola, Florida this 15th day of January 2014.


*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**